IN THE MATTER OF

# CIVIC DEVELOPMENT GROUP, INC., ET AL.

CONSENT ORDER, ETC., IN REGARD TO ALLEGED VIOLATION OF SEC. 5 OF THE FEDERAL TRADE COMMISSION ACT

*Docket C-3810. Complaint, June 5, 1998--Decision, June 5, 1998*

This consent order prohibits, among other things, the two organizations and the officers of each organization from engaging in deceptive charitable solicitations on behalf of local law enforcement agencies. In addition, the consent order requires both organizations to set up an education and monitoring program for employees.

*Appearances*

For the Commission: *Mona Spivack* and *Eileen Harrington.*

For the respondents: *Errol Copelivitz, Copelivitz & Canter*, Kansas City, MO.

## COMPLAINT

The Federal Trade Commission, having reason to believe that Civic Development Group, Inc. and Community Network, Inc., corporations, and Scott Pasch and David Keezer, individually and as officers of Civic Development Group, Inc., and Richard McDonnell, individually and as an officer of Community Network, Inc. ("respondents"), have violated the provisions of the Federal Trade Commission Act, and it appearing to the Commission that this proceeding is in the public interest, alleges:

1. Respondent Civic Development Group, Inc. ("CDG") is a New Jersey corporation with its principal office or place of business at 655 Florida Grove Road, Hopelawn, New Jersey. By itself or in concert with others, CDG controls the acts or practices of Community Network, Inc., including the acts or practices alleged in this complaint.

2. Respondent Community Network, Inc. ("CNI") is a Delaware corporation with its principal office or place of business at 655 Florida Grove Road, Hopelawn, New Jersey.

3. Respondent Scott Pasch is an officer of CDG. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CDG and CNI, including the acts or practices alleged in this complaint. His principal office or place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

4. Respondent David Keezer is an officer of CDG. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CDG and CNI, including the acts or practices alleged in this complaint. His principal office or place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

5. Respondent Richard McDonnell is an officer of CNI. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CNI, including the acts or practices alleged in this complaint. His principal office or place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

6. Respondents have solicited consumers by telephone and direct mail to contribute to a non-profit organization, the American Deputy Sheriffs' Association ("ADSA").

7. The acts and practices of respondents alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act.

8. Respondents have solicited consumers by telephone and direct mail to contribute to the ADSA. During these solicitations, respondents have represented, expressly or by implication, that:

A. Money contributed to the ADSA by consumers in the past had benefitted law enforcement offices in the town, city, county, or state in which the consumers reside;

B. Money contributed to the ADSA by consumers had been used in the past to purchase bullet-proof vests for law enforcement offices in the town, city, county, or state in which the consumers reside; and

C. Money contributed to the ADSA by consumers had been used in the past to pay death benefits to the survivors of deceased law enforcement officers who resided or worked in the town, city, county, or state in which the consumers reside.

9. In truth and in fact, in numerous instances:

A. Money contributed to the ADSA by consumers in the past had not benefitted law enforcement offices in the town, city, county, or state in which the consumers reside;

B. Money contributed to the ADSA by consumers had not been used in the past to purchase bullet-proof vests for law enforcement offices in the town, city, county, or state in which the consumers reside; and

C. Money contributed to the ADSA by consumers had not been used in the past to pay death benefits to the survivors of deceased law enforcement officers who resided or worked in the town, city, county, or state in which the consumers reside.

Therefore, the representations set forth in paragraph eight were, and are, false or misleading.

10. During the solicitations described above, the respondents have also represented, expressly or by implication, that:

A. Money contributed to the ADSA by consumers would be used to benefit law enforcement offices in the town, city, county or state in which the consumers reside;

B. Money contributed to the ADSA by consumers would be used to purchase bullet-proof vests for law enforcement offices in the town, city, county or state in which the consumers reside; and

C. Money contributed to the ADSA by consumers would be used to pay death benefits to the survivors of deceased law enforcement officers who resided or worked in the town, city, county, or state in which the consumers reside.

11. In truth and in fact, in numerous instances:

A. Money contributed to the ADSA by consumers is not used to benefit law enforcement offices in the town, city, county, or state in which the consumers reside;

B. Money contributed to the ADSA by consumers is not used to purchase bullet-proof vests for law enforcement offices in the town, city, county, or state in which the consumers reside; and

C. Money contributed to the ADSA by consumers is not used to pay death benefits to the survivors of deceased law enforcement officers who resided or worked in the town, city, county, or state in which the consumers reside.

Therefore, the representations set forth in paragraph ten were, and are, false or misleading.

12. The acts and practices of respondents as alleged in this complaint constitute unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act.

Commissioner Swindle not participating.

## DECISION AND ORDER

The Federal Trade Commission having initiated an investigation of certain acts and practices of the respondents named in the caption hereof, and the respondents having been furnished thereafter with a copy of a draft of complaint which the Bureau of Consumer

Protection proposed to present to the Commission for its consideration and which, if issued by the Commission, would charge respondents with violations of the Federal Trade Commission Act; and

The respondents, their attorneys, and counsel for the Commission having thereafter executed an agreement containing a consent order, an admission by the respondents of all the jurisdictional facts set forth in the aforesaid draft of complaint, a statement that the signing of said agreement is for settlement purposes only and does not constitute an admission by respondents that the law has been violated as alleged in such complaint, and waivers and other provisions as required by the Commission's Rules; and

The Commission having thereafter considered the matter and having determined that it had reason to believe that the respondents have violated the said Act, and that complaint should issue stating its charges in that respect, and having thereupon accepted the executed consent agreement and placed such agreement on the public record for a period of sixty (60) days, now in further conformity with the procedure prescribed in Section 2.34 of its Rules, the Commission hereby issues its complaint, makes the following jurisdictional findings and enters the following order:

1. Respondent Community Network, Inc. ("CNI") is a Delaware corporation with its principal place of business at 655 Florida Grove Road, Hopelawn, New Jersey.

2. Respondent Richard McDonnell is an officer of CNI. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CNI. His principal place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

3. Respondent Civic Development Group, Inc. ("CDG") is a New Jersey corporation with its principal place of business at 655 Florida Grove Road, Hopelawn, New Jersey. By itself or in concert with others, CDG formulates, directs, or controls the policies, acts, or practices of CNI, including the acts or practices alleged in this complaint.

4. Respondent Scott Pasch is an officer of CDG. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CDG and CNI, including the acts or practices alleged in this complaint. His principal place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

5. Respondent David Keezer is an officer of CDG. Individually or in concert with others, he formulates, directs, or controls the policies, acts, or practices of CDG and CNI, including the acts or

practices alleged in this complaint. His principal place of business is 655 Florida Grove Road, Hopelawn, New Jersey.

6. The acts and practices of the respondents alleged in this complaint have been in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act.

7. The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the respondents, and the proceeding is in the public interest.

## ORDER

### DEFINITIONS

For purposes of this order, the following definitions shall apply:

1. "*Material*" means likely to affect a person's choice of, or conduct regarding, their decision to contribute to a charity.

2. Unless otherwise specified, "*respondents*" means Civic Development Group, Inc., a corporation, its successors and assigns and its officers; Community Network, Inc., a corporation, its successors and assigns and its officers; Richard McDonnell, individually and as an officer of Community Network, Inc., and Scott Pasch and David Keezer, individually and as officers of Civic Development Group, Inc., and each of the above's agents, representatives, and employees.

3. "*Person*" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government agency, or any other group or combination acting as an entity.

4. "*Charity*" means any person which is, or is represented to be, a non-profit entity or which has, or is represented to have, a charitable purpose.

5. "*Charitable contribution*" means money or any item of value that any person gives or transfers to a respondent, charity, or other person following a representation by a respondent that the money or item of value would be given, in whole or in part, to a charity or would benefit, either in whole or in part, a law enforcement organization, law enforcement personnel or a law enforcement program.

6. "*Telephone solicitation*" means soliciting charitable contributions by telephone.

7. "*Telephone solicitor*" means any person who, in connection with telephone solicitation, initiates or receives telephone calls to or from a customer.

8. "*Affiliated company*" means any corporation, partnership, sole proprietorship, unincorporated entity or other organization of any kind owned or controlled, directly or indirectly, by any of the respondents in this matter.

I.

*It is ordered*, That respondents, directly or through any corporation, subsidiary, division, or other device, in connection with telephone solicitation, shall not misrepresent, in any manner, expressly or by implication, the purpose for which charitable contributions have been or will be used.

II.

*It is further ordered*, That respondents, directly or through any corporation, subsidiary, division, or other device, in connection with telephone solicitation, shall not misrepresent, in any manner, expressly or by implication, the geographic location of the charity, organization or program that has benefitted or will benefit from charitable contributions.

III.

*It is further ordered*, That respondents, directly or through any corporation, subsidiary, division, or other device, in connection with telephone solicitation, shall not misrepresent, in any manner, expressly or by implication, any fact material to the decision of any person to make any charitable contribution.

IV.

*It is further ordered*, That respondents, in connection with telephone solicitation directly or through any corporation, subsidiary, division or other device, shall adopt an education and monitoring program designed to ensure compliance with paragraphs I, II and III of this order. Such program shall include, but is not limited to:

A. Providing the brochure attached hereto as Exhibit 1 to all current and future employees, agents and representatives of respondents and any affiliated companies, and securing from each such person a signed and dated statement acknowledging receipt of the brochure. Respondents shall deliver this brochure to such current personnel within thirty (30) days after the date of service of this order, and to such future personnel within thirty (30) days after the person assumes such position or responsibilities;

B. Obtaining, from each charity for which the respondents directly or through any corporation, subsidiary, division, or other device, solicit charitable contributions prior to any charitable solicitation on behalf of any such charity and again every six months until respondents terminate all charitable solicitation on behalf of that charity:

1. Written notices that all sales, verification, rebuttal and any other telephone solicitation scripts used in connection with any such charitable solicitation on behalf of such charity do not misrepresent:

a. The identity or occupation of the telephone solicitor;
b. The program or programs aided by the solicited contributions; and
c. The geographic area or areas of the program's focus.

2. Written reports detailing the goods or services provided by the charity in support of each affirmative representation contained in each telephone solicitation sales script used in connection with soliciting charitable contributions on behalf of such charity.

Such notices and written reports shall not be effective for purposes of paragraph V of this order in the event the respondents know or reasonably should know that any representation in any telephone solicitation sales scripts used in connection with soliciting charitable contributions is false or misleading.

C. Monitoring, in each location from which the respondents solicit charitable contributions, a random and representative sample of all employees and agents of the respondents involved in charitable solicitation, at all times during which such employees and agents engage in charitable solicitation, to ensure that they comply with paragraphs I, II and III of this order;

D. So long as this order is in effect, taping a random and representative sample of all telephone solicitation calls in all locations from which such calls are placed and reviewing a random sample of no fewer than one thousand such calls every thirty days to determine whether the employees or agents of respondents or their affiliated companies have made representations in violation of paragraphs I, II or III or this order;

E. Providing written notice to each employee or agent of the respondents who makes any representation in violation of paragraphs I, II or III of this order, and terminating any employee or agent of the respondents who makes more than one material representation in

violation of paragraphs I, II or III of this order in any consecutive twelve month period.

V.

*It is further ordered*, That in any action brought by the Commission to enforce this order, unless respondents either know or reasonably should know of violations of this order other than those addressed pursuant to paragraph IV(E) of this order, there shall be a rebuttable presumption that the respondents have exercised good faith in complying with paragraphs I, II and III of this order, if the respondents show, by a preponderance of the evidence, that they have established and maintained the education and compliance program mandated in paragraph IV; provided, however, that the presumption shall only apply to all telephone solicitation calls emanating from those locations where respondents have conducted taping pursuant to paragraph IV(D) of this order.

VI.

*It is further ordered*, That respondents shall, for a period of five (5) years from the date of entry of this order, maintain and permit representatives of the Federal Trade Commission access to their business premises to inspect and copy all documents relating in any way to any conduct subject to this order, including but not limited to:

A. All scripts used by respondents in connection with the solicitation of charitable contributions directly or through any subsidiary, division or other device and all other promotional material used in the solicitation and collection of any charitable contribution;

B. All complaints and other communications with consumers and governmental or consumer protection organizations; provided, however, that respondents shall keep all complaints, inquiries or other notations accompanying consumers' contributions for one year;

C. All notices and reports pursuant to paragraph IV(B) of this order;

D. All tape recordings required to be reviewed by respondents pursuant to paragraph IV(D) of this order, together with all documents detailing the locations at which the respondents conduct such taping, and all other tape recordings made by respondents pursuant to paragraph IV (D) to be kept by respondents for a period of one year,

E. All records of violations of paragraphs I, II or III of this order respondents discovered as a result of its monitoring, taping, other compliance program pursuant to paragraph V of this order, or for any

other reason, including the date, the name of the employee or agent, the subject of the telephone solicitation call, the misrepresentation, the number of times the employee or agent has violated paragraphs I, II or III of this order in the preceding twelve months, and a copy of the written warning or termination notice resulting from such violation; and

F. All statements required to be obtained pursuant to paragraph VII, below.

The Commission may otherwise monitor any respondents' compliance with this order by all lawful means available, including the use of investigators posing as consumers or clients.

VII.

*It is further ordered*, That respondents shall, for a period of five (5) years from the date of entry of this order, permit representatives of the Commission to interview and depose, under oath, at the respondents' business premises, the officers, directors, or employees of any such business with regard to compliance with the terms of this order. Such officers, directors, or employees may have counsel present. The respondents shall refrain from interfering with duly authorized representatives of the Commission who wish to interview the respondents' officers, directors, or employees relating in any way to any conduct subject to this order.

VIII.

*It is further ordered*, That respondents, directly or through any corporation, subsidiary, division, or other device, shall not provide means and instrumentalities to, or otherwise assist or facilitate, any person who respondents know or should know makes false or misleading representations about the purpose for which charitable contributions have been or will be used, the geographic location of the charity, organization or program that has benefitted or will benefit from charitable contributions, or any other fact material to the decision of any person to make any charitable contribution.

For purposes of this paragraph, "assist or facilitate" includes but is not limited to:

Providing or arranging for the provision of telephone service or equipment;

Providing or arranging for the provision of computer hardware or software;

Providing or assisting in the development of telephone scripts or other marketing material;

Mailing or arranging for the mailing of any solicitation or marketing material; or

Providing or arranging for the provision of names of prospective contributors.

IX.

*It is further ordered*, That respondents shall, for a period of five (5) years from the date of entry of this order, deliver a copy of this order to all current and future principals, officers, directors, and managers of respondents or of any affiliated companies having responsibilities with respect to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order. Respondents shall deliver this order to such current personnel within thirty (30) days after the date of service of this order, and to such future personnel within thirty (30) days after the person assumes such position or responsibilities.

X.

*It is further ordered*, That respondents Civic Development Group, Inc. and Community Network, Inc. shall notify the Commission at least thirty (30) days prior to any change in the corporation(s) that may affect compliance obligations arising under this order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address. Provided, however, that, with respect to any proposed change in the corporation about which respondents learn less than thirty (30) days prior to the date such action is to take place, respondents shall notify the Commission as soon as is practicable after obtaining such knowledge. All notices required by this paragraph shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C.

XI.

*It is further ordered*, That respondents Community Network, Inc., Civic Development Group, Inc., and their successors and assigns and respondents Scott Pasch, David Keezer, and Richard McDonnell, within sixty (60) days after the date of service of this order, and again

180 days following entry of this order, and again at such other times as the Federal Trade Commission may require, file with the Commission a report, in writing, setting forth in detail the manner and form in which they have complied with this order. The reports required by this paragraph shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C.

XII.

*It is further ordered*, That respondents Scott Pasch, David Keezer, and Richard McDonnell, for a period of ten (10) years after the date of issuance of this order, shall notify the Commission of the discontinuance of their current business or employment, or of their affiliation with any new business or employment. The notice shall include respondents' new business address and telephone number and a description of the nature of the business or employment and their duties and responsibilities. All notices required by this paragraph shall be sent by certified mail to the Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C.

XIII.

This order will terminate on June 5, 2018, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of:

A. Any paragraph in this order that terminates in less than twenty (20) years;
B. This order's application to any respondent that is not named as a defendant in such complaint; and
C. This order if such complaint is filed after the order has terminated pursuant to this paragraph.

Provided, further, that if such complaint is dismissed or a federal court rules that the respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this paragraph as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later

of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

Commissioner Swindle not participating.

EXHIBIT 1

**WHAT ARE MY OBLIGATIONS AS A PROFESSIONAL FUNDRAISER?**

As a professional telemarketer raising funds for nonprofit or charitable entities, you have a legal obligation and a moral responsibility to tell the truth. In fact, your obligation to tell the truth is especially important because your company has entered into an order with the Federal Trade Commission prohibiting misrepresentations when soliciting donations. Violations of this order may result in the termination of your employment and a law enforcement action.

When you lie to consumers, you not only expose yourself and your company to legal liability, but you harm the credibility of all charitable or nonprofit organizations that rely on donations, including the ones we represent.

Simply put, you **may not** misrepresent any fact a person would rely on in deciding to give money. For example:

1. You may not falsely claim that money has gone or will go to purchase a specific item, such as bullet proof vests.
2. You may not falsely claim that money has gone or will go for a specific purpose, such as to pay for death benefits for families of fallen police officers.
3. You may not falsely claim that money has gone or will go to an organization in a particular location.
4. You may not lie about your occupation or employer, such as by saying you are a police officer, state trooper or deputy sheriff, if you do not hold such a position, or by claiming that you are a member of an organization if you are not.

**WHAT DO I DO IF I KNOW THE SCRIPT IS FALSE OR MISLEADING?**

You may be liable for violations of law if you knowingly make false statements to consumers. In addition, the Federal Trade Commission order with your company requires the company to terminate your employment if you lie to consumers.

**HOW DO I RESPOND TO QUESTIONS?**

Do not make up answers under any circumstances. Stop the presentation and ask your employer for the correct answer. A false rebuttal is every bit as serious as a false initial presentation, and may subject you to legal action and the termination of your employment.